## S. C. Van Horn, Appellee, v. William A. Stautz, Appellant.

1. SALES, § 401*—*when evidence shows breach of warranty.* In an action to recover damages alleged to have been sustained by breach of an express warranty of the soundness of hogs bought by plaintiff from defendant, evidence examined and *held,* though conflicting, to support a verdict for plaintiff.

2. SALES, § 404*—*what is measure of damages for breach of warranty.* In an action to recover damages for breach of an express warranty of the soundness of hogs bought by plaintiff from defendant, if there is a fair cash market value for the hogs diseased as they were shown to have been when delivered to plaintiff, the correct measure of damages is the difference between such value and the fair cash market value of sound hogs.

3. SALES, § 404*—*when commodity has market value.* For a commodity to have a market value, there must be a market for it, that is, a demand therefor and an ability from such demand to sell the commodity when a sale thereof is desired.

4. SALES, § 404*—*how damages may be proved.* In an action to recover damages for breach of an express warranty of hogs, if the hogs are shown to have been diseased and, in such condition, had no market value, plaintiff's damages can be established by showing the actual value and deducting it from the fair cash market value of the hogs if they were sound.

5. SALES, § 404*—*what is amount of damages where goods are of no value.* In an action to recover damages for breach of an express

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

warranty of soundness of hogs sold to plaintiff by defendant, where plaintiff's evidence that the hogs were of no value is uncontroverted. he is entitled to recover the amount paid for them.

6. APPEAL AND ERROR, § 1575*—*when amount of recovery cannot be objected to.* Appellant cannot complain that the appellee was awarded a less sum than that to which he was entitled under the evidence.

7. APPEAL AND ERROR, § 493*—*when judgment cannot be objected to on appeal.* In an action to recover damages for breach of an express warranty of the soundness of hogs, while plaintiff should not be permitted to recover the full amount paid for the hogs and at the same time to retain such of the hogs as lived, where the case is meritorious and the evidence shows that plaintiff was entitled to recover and the excessiveness of the verdict was not urged below as a reason for setting aside the verdict and granting a new trial nor assigned as error on appeal, the judgment permitting him to do so will be affirmed.

Appeal from the Circuit Court of McLean county; the Hon. SAIN WELTY, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed April 27, 1920.

A. E. and R. C. DE MANGE, for appellant.

FRANK GILLESPIE and LIVINGSTON & WHITMORE, for appellee.

MR. JUSTICE WAGGONER delivered the opinion of the court.

This is an action in assumpsit brought by appellee to recover damages alleged to have been sustained on account of a breach of an express warrant of soundness of one hundred and sixty-four hogs bought by him from A. R. Hollis, a salesman of appellant.

The hogs were sold and delivered at the railroad stock pens at Funks Grove, Sunday, September 29, 1918. The next morning after the sale they were hauled in wagons to appellee's farm. Several of them were sick that afternoon. Tuesday morning fifty or sixty were sick and an additional twenty-five or

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly; same topic and section number.

thirty refused feed and water. A veterinarian was called and pronounced the herd infected with a disease known as mixed infection. As a result of the disease sixty-two of the one hundred and sixty-four hogs died, and the remainder, treated for mixed infection, lived. Ninety-six of the hogs, after being fed eighty-eight days, showed a gain of thirty-five and one-half pounds. The defense is, not that the hogs were sound, but that there was no warranty.

The testimony of the parties to the sale is diametrically opposed each to the other. The salesman denied having warranted the soundness of the hogs, but insisted that no statements were made by him as to their condition other than expressions of opinions in reference thereto; that appellee bought the hogs relying on his own judgment after an inspection of them, together with an examination of an official health certificate issued by W. N. Russell, a Deputy State Veterinarian, to the effect that he had inspected one hundred and fifty of the hogs contained in the car in which those in question had been shipped from West Plains, Missouri, to Funks Grove, Illinois, and found them to be free from symptoms of contagious, infectious or communicable disease, and that he (the salesman) had no information other than that so acquired by appellee.

Appellee testified that on September 21, 1918, Hollis asked him if he wanted to buy a load of feeding hogs; that he (appellee) said that he wanted immune, healthy hogs weighing about one hundred pounds, and asked the price; that Hollis told him twenty cents a pound; that appellee said he would give that for good healthy immune hogs and Hollis said he would get them for him; that on Sunday morning, September 29, Hollis telephoned him that the hogs had arrived at Funks Grove that night; appellee asked if the hogs were all right; Hollis replied they were; appellee said that if they were not all right he did not want them;

Hollis again said they were all right. After the tele-phone conversation appellee went to Funks Grove, where he met Hollis, and they together looked at the hogs. Appellee further testified that after seeing the hogs he told Hollis he did not like the looks of them; that they looked gaunted up; Hollis said the appear-ance was caused by having been in the car so long; that Lawrence Funk and Dean Funk had gotten hogs like them which were doing fine. Appellee said if they were not all right he did not want them at any price. Hollis again said they were all right. The hogs, to be taken by appellee, were then selected, a computation made, and a check given by him for $3,198 in payment for them.

Appellee is corroborated by two witnesses, who claim to have heard what was said to him by Hollis over the telephone, and by circumstances shown on the trial.

The jury accepted appellee's version of what trans-pired prior to and at the time of the sale, and we would not set aside the verdict on the ground that it is against the weight of the evidence.

In the first instruction, given on behalf of appellee, the jury were told that if they found facts to be as therein indicated their verdict should be in favor of the plaintiff for such damages, if any, as they be-lieved from the evidence he had sustained by reason of the hogs being diseased at the time of the sale. In appellee's ninth instruction the jury were told that if they found for the plaintiff that they might fix the damages, if any, at such sum as from the evidence they found to be the difference between the fair cash market value of the hogs in question if they had been all right at the time they were delivered to the plain-tiff, and their fair cash market value as they actually were at the time of the delivery.

Appellant, in his brief, argues that the correct measure of damages is as stated in this last instruc-

tion, but that there was no evidence before the jury to sustain it. Appellee, when testifying as a witness in his own behalf, was asked whether from his experience in handling and marketing hogs, he had an opinion whether the hogs in question had any market value on the day they were delivered to him. To this question appellant interposed an objection that it was incompetent, and improper, and the objection was sustained. Appellee was then asked whether he had an opinion as to the value of the hogs in question, on the day they were delivered, in the condition they were in. Appellant interposed the same objection and it was sustained. Appellee was again asked as to the market value, and as to their value on the day of the delivery. The same objection to each of these questions was made and sustained. So there is no proof of market value or value on the day of the delivery because of a general objection made, when such proof was offered, and sustained by the court. Appellee was asked as to the market value on Monday, the day following the sale and delivery of the hogs, the same objection was overruled, and he answered that they were not worth anything. On cross-examination he said he based his opinion that they had no value on the ground that nobody would buy a sick hog to feed; that he based his opinion that they had no cash market value on Sunday or Monday because they had no value as feeders; did not think they had a market value; nobody would buy them. L. M. Morin, veterinarian, testified the hogs, on Wednesday and Thursday following the sale, were all sick and had practically no market value. Appellant called no witness on the question of the value of the hogs, and appellee called none other than the veterinarian and testified himself. It is not controverted that if the hogs had been sound their fair cash market value would have been from eighteen to twenty cents a pound, and the latter price was paid for them.

The evidence shows the hogs were diseased at the time they were delivered to appellee, and if there was a fair cash market value for such hogs, the correct measure of damages would be the difference between it and the fair cash market value of sound hogs. In order to say of a thing that it has a market value, it is necessary that there should be a market for such commodity, that is, a demand therefor, and an ability from such demand to sell the same when a sale thereof is desired. (8 R. C. L. 488.) If the hogs, in the condition they were shown to be in, had no market value, then appellee's damages could be established by showing the actual value (8 R. C. L. 488; 13 Ency. of Evidence, page 510), and deducting it from the fair cash market value of the hogs if they had been free from disease.

The evidence submitted to the jury was that the hogs were of no value, and appellant did not controvert it. If they were of no value, appellee would have been entitled to a verdict for $3,198, and that he was awarded a less sum would be a matter that he alone (not appellant) could complain of, but the evidence shows that one hundred and two of the hogs lived, and appellee should not have received the full amount paid for the hogs and have one hundred and two of them.

The evidence in this case discloses that appellee has a meritorious cause of action, and was entitled to recover. That the damages awarded by the jury are excessive was not assigned for error in this court, and was not urged as a reason for setting aside the verdict and granting a new trial in the court below.

We believe that substantial justice has been done; that a retrial of the case would result in a verdict for appellee, and while the record in this case is not free from error, we find none requiring a reversal, and the judgment will be affirmed.

*Judgment affirmed.*